UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSEPH T.,

                Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

19-CV-1714-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13)

Plaintiff Joseph T.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 5) is denied and defendant's motion (Dkt. No. 10) is granted.

_____

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## **BACKGROUND**[2]

On May 12, 2015, plaintiff applied for DIB and SSI alleging disability beginning March 5, 2015, due to high blood pressure, heart problems, chronic fatigue, arthritis in lower back, muscle spasms in back, and swelling in hands and feet. (Tr. 97-98)[3] Plaintiff's claims were denied at the initial level on November 13, 2015, and again after a *de novo* hearing before an Administrative Law Judge ("ALJ") on January 8, 2018. (Tr. 35-50, 51-95, 117) On October 29, 2019, the Appeals Council vacated the ALJ's decision and issued its own unfavorable decision. (Tr. 4-23) This action followed. (Dkt. No. 1)

## **DISCUSSION**

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

---

[2] The Court presumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[3] References to "Tr." are to the administrative record in this case. (Dkt. No. 4)

2

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

3

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second,

whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to

5

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

    III.    <u>The Appeals Council's Decision</u>

The Appeals Council Administrative Appeals Judge ("AAJ") followed the required five-step analysis for evaluating plaintiff's claim.  Under step one, the AAJ found that plaintiff did not engage in substantial gainful activity since May 5, 2015.  (Tr. 10)  At step two, the AAJ found that plaintiff had the severe impairments of hypertension, coronary artery disease status post coronary artery bypass grafting, and obesity.  (Tr. 10)  At step three, the AAJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the Listings.  (Tr. 10-12)  Before proceeding to step four, the AAJ found that plaintiff had the RFC to perform a reduced range of light work, except that he could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, and could never climb ladders, ropes, or scaffolds. (Tr. 12)  At step four, the AAJ determined that plaintiff could perform his past relevant work as a food service worker.  (Tr. 17-18)   Accordingly, the AAJ found that plaintiff had not been under a disability within the meaning of the Act.  (Tr. 18)

    IV.    <u>Plaintiff's Challenges</u>

Plaintiff seeks remand of the Commissioner's decision on the following grounds: (1) the ALJ and the AAJ erred by failing to properly develop the record; and (2) the ALJ and AAJ impermissibly formulated the RFC based on their lay judgment instead of a competent medical opinion.  (Dkt. No. 5-1 at 10-16)

6

### A.   Development of the Record

Plaintiff first argues that the record was not fully developed because the opinion from the consultative examiner was stale. (Dkt. No. 5-1 at 10-16) As such, the AAJ was required to order an updated consultative examination. (*Id.*)

"The mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." *Whitehurst v. Berryhill*, No. 16-CV-1005, 2018 WL 3868721, *4 (W.D.N.Y. Aug. 14, 2018); *see also Cruz v. Comm'r of Soc. Sec.*, No. 16-CV-0965, 2018 WL 3628253, *6 (W.D.N.Y. July 31, 2018) ("A consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition"). Thus, "[a] medical opinion based on only part of the administrative record may still be given weight if the medical evidence failing chronologically before and after the opinion demonstrates substantially similar limitations and findings." *Pritchett v. Berryhill*, No. 17-CV-0719, 2018 WL 3045096 (W.D.N.Y. June 20, 2018) (internal citations and quotations omitted).

On September 9, 2015, plaintiff underwent an internal medicine examination by consultative examiner Dr. Hongbiao Liu. (Tr. 319-22) Plaintiff reported that he had a heart attack in 2014, and underwent a coronary artery bypass graft procedure with four clogged vessels the same year. (Tr. 319) His last cardiologist visit was in 2014; last nuclear stress test in 2014; stable; and unknown ejection fraction. (*Id.*) He reported feeling short of breath after walking one block, going up five stairs, and sleeping with two pillows. (*Id.*) Plaintiff further reported chronic low back pain for more than five years, with a current pain level of 8/10 described as constant pressure and sharp. (*Id.*) He was able

7

to walk one block, and needed to change position every five minutes while sitting or standing. (*Id.*) Plaintiff reported that his low back pain radiated into his legs and that he experienced associated numbness and tingling bilaterally. (*Id.*) Plaintiff had no physical therapy, chiropractor therapy, x-rays, or MRIs, and was not currently on any medications. (*Id.*)

Upon examination, plaintiff was 6 feet tall and 245 pounds. His blood pressure was 172/100. Plaintiff had mild difficulty walking on his heels and toes, and had a reduced squat due to his low back pain. (Tr. 320) Musculoskeletal and neurological examinations were unremarkable. (Tr. 321) Dr. Liu instructed plaintiff to go to the emergency room or urgent care that day for treatment of his high blood pressure, as he had no primary care physician due to recently moving to Buffalo from Georgia. (Tr. 320)

Dr. Liu diagnosed plaintiff with history of heart attack, hypertension, chronic low back pain, and obesity. (Tr. 321) Dr. Liu opined that plaintiff's prognosis was stable, and that he "should avoid moderate exercise activities because of [his] cardiac condition." (*Id.*)

The AAJ afforded Dr. Liu's opinion some weight, in part, because the opinion was based upon the doctor's knowledge of plaintiff's diagnoses and history of treatment, as well as an in-person clinical examination. (Tr. 16-17) *See* 20 C.F.R. §§ 404.927(c)(1), 416.927(c)(1) (in evaluating medical opinions, the ALJ will consider whether the medical source examined plaintiff); §§ 404.1527(c)((3), 416.927(c)(3) (the adjudicator will consider whether the opinion is supported by medical findings); §§ 404.1527(c)(6), 416.927(c)(6) (considering factors such as the source's familiarity with the disability program).

8

The AAJ went on to acknowledge that the opinion from Dr. Liu was "stated in vague language, such as using the term 'moderate' rather than functionally specific terms," and was based on a single examination rather than a longitudinal treatment relationship. (Tr. 16-17) The AAJ explained that the opinion was considered "in light of the record evidence as a whole," and concluded that the examination findings were somewhat consistent with the longitudinal record, which showed a history of cardiac bypass surgery and hypertension, for which plaintiff required emergency room care. (Tr. 16-17)

As an initial matter, Dr. Liu rendered his opinion during the relevant period. *See Andrews v. Berryhill*, No. 17-CV-6368, 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) ("Both [physicians'] opinions fall within the relevant period and therefore are not 'stale'. The fact the opinions were made prior to Plaintiff's [subsequent treatment] does not render them *per se* unreliable, as an ALJ has the duty to review the record as a whole, including medical opinions and any other relevant evidence received.") Nor is there evidence that plaintiff's condition worsened over time. *See Camille v. Colvin*, 652 Fed. Appx. 25, 28 (note 4) (2d Cir. 2016) (rejecting staleness argument where evidence submitted later did not differ materially from the evidence reviewed by the State agency physician); *see also Andrews*, 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (ALJ did not err in relying on dated opinions where there was no indication the plaintiff's "condition had significantly deteriorated after the issuance of . . . [the] opinions such that they were rendered stale or incomplete").

In support of his contention that his condition deteriorated over time, plaintiff cites to multiple emergency room visits after Dr. Liu's examination. (Dkt. No. 5-1 at 11-12, Dkt.

9

No. 12 at 2) However, a review of the record and the AAJ's discussion of the evidence does not reveal such deterioration.

Plaintiff sought emergency room treatment on September 5, 2015, per Dr. Liu's instruction based on his elevated blood pressure indicating stage 2 hypertension. (Tr. 319, 323, 325, 749-64) The AAJ found no notes to confirm what kind of treatment plaintiff received while in emergency care. (Tr. 14) At the time of the September, 2015, consultative examination and emergency room visit, plaintiff had not taken his medications. (Tr. 14, 319, 325, 749-64) Emergency room notes document that plaintiff had "not become established with a primary care doctor or cardiologist before, he has not had his medication since March." (Tr. 752) Plaintiff denied chest pain, shortness of breath, and palpitations, had a normal cardiology examination, was not in acute distress, and had normal laboratory and diagnostic testing results, including an EKG and chest x-ray. (Tr. 752-53) His blood pressure stabilized with treatment, and he was released with instruction to follow up with a cardiologist. (Tr. 755)

In March, 2016, plaintiff returned to the emergency department for treatment of hypertension and a muscle strain. Examination revealed normal range of motion. (Tr. 14, 766-74) The attending physician advised plaintiff to "get . . . back on meds," and stated that it was "VERY important [for plaintiff to] get back on heart and blood pressure medications . . . ." (Tr. 738, 770) Plaintiff had elevated blood pressure and reported right-side pain, but had normal range of motion and normal examination of the cardio, respiratory, and neurological systems. (Tr. 769-70) Plaintiff denied muscle pain, back pain, and shortness of breath. (Tr. 769) Plaintiff was diagnosed with hypertension "uncontrolled due to NOT being on [medications] in over 1 [year]," a history of coronary

10

artery disease, and a muscle strain, and was again urged to attend a follow-up appointment for his cardiovascular impairments. (Tr. 770)

Plaintiff sought emergency department care in July, 2016, for an acute left knee injury, during which the attending physician noted that plaintiff had high blood pressure indicative of stage 2 hypertension. (Tr. 14, 776) As the AAJ observed, emergency department records indicate that plaintiff had been prescribed hypertension medications in March, 2016, which he took for one month but did not refill his prescriptions. (Tr. 14, 781) Plaintiff again denied shortness of breath, and had a normal examination, but for mild to moderate swelling, normal left knee range of motion, no tenderness, and no acute distress related to an injury to the left knee cartilage, for which he was given a knee brace. (Tr. 779, 781-82)

In August, 2016, plaintiff returned to the emergency department for sudden chest pain, and had an abnormal stress test. (Tr. 14, 784-856) During this visit, plaintiff underwent a successful cardiac catheterization. (Tr. 14, 795) Plaintiff had not been taking medications "for some time" and had been characterized as "lost to follow up." (Tr. 787, 789) He also admitted to both cigarette smoking and marijuana use. (Tr. 792) Upon release, plaintiff was asked to resume medications. (Tr. 788)

The AAJ also discussed plaintiff's September, 2017, emergency room visit for chest pain. (Tr. 14) On examination, plaintiff's blood pressure was 147/94 indicating stage 1 hypertension. Examination findings were overall normal, and chest imaging was unremarkable. (Tr. 14, 720-26)

The AAJ expressly considered plaintiff's treatment before and after the consultative examination. The treatment records cited above indicate that plaintiff's

condition remained the same and did not deteriorate over time.  Dr. Liu's opinion and the examination results adequately reflect plaintiff's functioning throughout the relevant period and was therefore not stale.  See *Camille*, 652 Fed. Appx. at 28 n.4, *see also Andrews*, 2018 WL 2088064, at *3.  Accordingly, the AAJ did not err in utilizing this opinion to formulate the RFC.

In a related argument, plaintiff contends that the AAJ was required to further develop the record by obtaining an updated consultative examination.  (Dkt. No. 5-1 at 11)   The adjudicator's duty to further develop the record, which may include ordering a consultative examination or re-contacting a medical source in some circumstances, is implicated only where the overall evidence is insufficient to reach a conclusion as to whether a claimant is "disabled" within the meaning of the Act.  See 20 C.F.R. §§ 416.919a(b), 416.920b(b); *see also, e.g., Janes v. Berryhill*, 710 Fed. Appx. 33, 34 (2d Cir. 2018) ("The ALJ is not required to develop the record any further when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'") (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).  As explained above, nothing in the record post-dating Dr. Liu's opinion was inconsistent with the AAJ's finding that plaintiff could perform the demands of light work.  Nor is there evidence of a worsening condition: Dr. Liu's evaluation of plaintiff considered elevated blood pressure, and plaintiff continued to have similar episodes due to noncompliance with conservative treatment recommendations, such as taking medications and quitting smoking.  The AAJ therefore did not breach his duty to develop the record and was not required to order a new consultative examination.  *See Raymonda C. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0178, 2020 WL 42814, at *6 (N.D.N.Y. Jan. 3, 2020) ("Plaintiff has failed . . . to point to any

persuasive way in which the record was so deficient that the ALJ could not have made a decision related to the post-surgery period without a new consultative examination.") (citing *Cox v. Astrue*, 993 F. Supp. 2d 169, 177 (N.D.N.Y. 2012)); *see also Frazier v. Comm'r of Soc. Sec.*, No. 16 Civ. 4320, 2017 WL 1422465, at *16 (S.D.N.Y. Apr. 20, 2017) (plaintiff did not cite to any "intervening medical evidence in the record calling into question the relevance" of the consultative examiner's observations or opinions; the ALJ was entitled to weigh it like any other medical opinion evidence).

### B. Lay Opinion

Plaintiff also argues that the RFC was impermissibly based on the lay judgment of the AAJ because Dr. Liu's opinion was stale. (Dkt. No. 5-1 at 13-16) This argument must necessarily fail, as the Court has found that the AAJ properly considered and weighed Dr. Liu's consultative opinion, which was consistent with the balance of the record evidence. In any event, a medical source statement or formal opinion is not always required where there is sufficient evidence in the record from which the ALJ can assess a plaintiff's RFC. *See Monroe v. Comm'r of Soc. Sec*, 676 Fed. Appx. 5, 9 (2d Cir. 2017) (finding that the ALJ could rely on treatment notes and activities of daily living to formulate the RFC assessment); *Johnson v. Colvin*, 669 Fed. Appx. 44, 46 (2d Cir. 2016) (explaining that an ALJ looks to "all of the relevant medical and other evidence" including relevant medical reports, medical history, and statements from the claimant when assessing the claimant's RFC); 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"). Here, the AAJ properly relied, in part, upon the results of Dr. Liu's examination of plaintiff, plaintiff's treatment notes, and plaintiff's activities of daily living to

13

conclude that plaintiff could perform a range of light work. (Tr. 10-17) See *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Accordingly, the AAJ's decision is supported by substantial evidence and free of legal error.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 5) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 10) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:  February 13, 2021
        Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge